**KRAFT v. A. H. BULL S. S. CO., Inc.**

District Court, S. D. New York.
July 26, 1939.

Harry S. Austin, of New York City, for libellant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert P. Nash, of New York City, of counsel), for respondent.

CONGER, District Judge.

The libellant, Sigurd Kraft, claims to have been injured on the 21st day of April, 1938, while he was in the employ of the respondent, A. H. Bull Steamship Company, Inc., on the S. S. "Emilia". He claims to have been employed as a seaman on said vessel and he sues under the Jones Act, 46 U.S.C.A. § 688, by which act seamen were given the benefits of the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59. He sues for personal injury, medical bills, maintenance and cure, etc. The respondent denies general liability and alleges a special defense that at the time of the accident the libellant was a harbor worker and could not recover damages under the Jones Act and that any relief he may have must be under the provision of the Longshoremen's and Harbor Workers' Compensation Act (Act of March 4, 1927; 33 U.S.C.A. § 905).

This creates herein two main issues and this last issue must be disposed of first; if the libellant is a harbor worker and if he comes under and is included in the provisions of said Compensation Act he cannot recover in this action because the Compensation Act provides a remedy for him which is exclusive.

There is no question but that the libellant was injured at the time and place claimed by him while the vessel was in the navigable waters of the United States. It will not be necessary for me to take up the question of negligence or want of care on the part of those in charge of the vessel because I have come to the conclusion that the libellant cannot succeed because he was at the time of his injury an employee within the meaning of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., and therefore cannot succeed under the Jones Act.

The pertinent part of the said Compensation Act reads as follows:

"§ 903. *Coverage.* (a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—

"(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net."

Had this accident to the libellant occurred prior to the enactment of the Compensation Act, he would rightfully be in this Court. He was a seaman; he was injured in the course of his employment which was on board ship in the navigable waters of the United States. This would have entitled him to claim the benefit of the Jones Act but the Compensation Act changed all this. It applies to all employees injured while engaged in maritime employment on navigable waters of the United States if recovery may not validly be provided by a State Compensation Law. It must be conceded that no State Compensation Law enters into this situation so that the libellant's case comes squarely within the conditions and situation contemplated by the Compensation Act, and its remedy is exclusive. His case is taken out of the scope of the Jones Act unless and except he comes within the exception in the Compensation Act which does not cover accidents to an "officer or member of a crew of any vessel." The scope of the Jones Act has been narrowed by the Compensation Act. Now, in order to come within its provisions, one must not only be an injured seaman but he must be a

member of the crew of the vessel on which the accident occurred which results in injury to him. So that the question for decision here is: "Was libellant at the time of his injury a member of the crew of the S. S. "Emilia"?

■ There have been cited to me by both sides definitions of the words "seaman" and "member of the crew." I am not so much interested in the definition of the word "seaman." There is no dispute but that the libellant was a seaman and had his A. B. certificate. That is not a controlling factor. He was engaged in maritime work when injured but was he a member of the ship's crew? The character of work he was doing is not a controlling factor. Maryland Casualty Company v. Lawson, 5 Cir., 94 F.2d 190, 192.

■ There are several cases which have interpreted the phrase "ship crew" as contemplated by the Compensation Act. In the Maryland Casualty Company v. Lawson case, supra, the Court disclaiming any attempt at a definition of the crew of a vessel did state: "There is implied a definite and permanent connection with the vessel, an obligation to forward her enterprise and to protect her in emergency, and a right to look to her and her earnings for wages. If she has a master, there is subjection to his commands. The nature of the work done is not determinative. Engineers and cooks as well as sailors are included. Longshoremen who load and unload a vessel under temporary local employment do not become members of the crew, nor do mechanics who similarly come aboard her to repair or clean or paint her; nor do those permanently employed upon her cease to be members of the crew because they are put at the same sort of work."

Again, we find in the case of Seneca Washed Gravel Corp. v. McManigal, 2 Cir., 65 F.2d 779, 780, the following: "The word 'crew' is used in the statute to connote a company of seamen belonging to the vessel, usually including the officers. It is the 'ship's company.' United States v. Winn, 28 Fed.Cas. 733, No. 16,740. The crew is usually referred to and is naturally and primarily thought of as those who are on board and aiding in the navigation without reference to the nature of the arrangement under which they are on board. The Bound Brook (D.C.) 146 F. 160, 164; The Buena Ventura (D.C.) 243 F. 797, 799."

Many and varied other definitions of "crew" have been called to my attention but I think the above cases fairly represent the settled law on this subject.

■ Where does the libellant fit in and does he possess sufficient of the attributes mentioned above so that he was a member of the crew of the S. S. "Emilia." Was he a member of that ship's company. A brief resume of his hiring and his duties might be helpful.

Libellant, a licensed A. B., was hired by the employment manager, of the respondent, as a member of the "shore gang." His duties as a member of the shore gang were shifting ships, cleaning holds, getting the hold ready for cargo, chipping rust, dock work, handling supplies, cleaning up the north side of the pier. There was no serious dispute about this. One witness for the libellant, the foreman, testified that seventy-five percent of the work was on board ship; twenty-five percent on land. Generally, the work was that which sailors are required to do while the vessel is laid up at the docks. Still, as pointed out before, the character of the work is not wholly determinative.

The libellant did not go outside New York Harbor on a ship; did not sleep on the ship; did not eat there; except when the vessel was away from its dock or going from dock to dock in the harbor. He was attached to no one ship but might work on two or three in a day. Could it be said that he was a member of the crew of each of such ships? I think not. True, he was expected to take the place of a seaman if the vacancy occurred in the ship's crew. In that event, of course, he would become the member of the crew—but that did not occur.

Libellant worked under a foreman, Goldsmith, who was not an officer or member of the crew but a part of the shore gang. Goldsmith gave him his orders. Even when shifting ship he was still subject to Goldsmith's order and not to the officer of the particular ship he happened to be on. He was required to have, and did have, a "Social Security Card." This is not required under the law of a sailor, a member of the crew of a vessel. He was not under orders of the ship's officers but had his own foreman, who was attached to no ship. He was not subject to discipline demanded and the orders and directions of the master of the vessel nor any of the subordinate officers of the vessel. It would

be a strained construction to say, under all these circumstances that at the time of his accident, libellant was a member of the ship's company. A more common sense view and one supported by the cases is that he was a member of a "shore gang" attached to no particular ship, going from ship to ship at the command of his superior who likewise was attached to no ship and, in addition, that he was a stand-by seaman ready to take the place of a crew member when there was a vacancy; but this did not occur.

The libellant is not without remedy. He can be compensated for his injuries and damage thru the Compensation Act.

The respondent has complied with the provisions of that Act and its employees, including the libellant, and may have recourse to it for relief.

I find for the respondent and against the libellant on the ground that the libellant is covered by the provisions of the Longshoremen's and Harbor Workers' Compensation Act which precludes him from remedy under the provisions of the Jones Act. Decree to be entered in accordance with this decision.